Filed 11/3/23  K.L. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| K.L. et al.,<br><br>      Petitioners,<br><br>      v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>      Respondent;<br><br>KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>      Real Party in Interest. | F086669, F086680<br><br>(Super. Ct. No. JD144326-00)<br><br><br>**OPINION** |

## THE COURT[*]

ORIGINAL PROCEEDINGS; petitions for extraordinary writ.  Susan M. Gill, Judge.

K.L., in pro. per., for Petitioner.

C.L., in pro. per., for Petitioner.

No appearance for Respondent.

Margo A. Raison, County Counsel, and Jennifer E. Feige, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Peña, J. and Snauffer, J.

Petitioners K.L. (mother) and C.L. (father), in propria persona, seek extraordinary writs (Cal. Rules of Court, rules 8.450–8.452)[1] from the juvenile court's orders issued at a contested disposition hearing bypassing them for reunification services pursuant to Welfare and Institutions Code section 361.5, subdivision (b)(6)[2] (sexual abuse) and setting a section 366.26 hearing as to their daughter S.L. (born September 2006). Mother and father seek writs directing the juvenile court to vacate the section 366.26 hearing, and order reunification services or return S.L. to their custody. In addition, they request a temporary stay of the proceedings below. We deny their petitions and their request for a stay.

**FACTUAL AND PROCEDURAL BACKGROUND**

## A. *Referral and Investigation*

On February 8, 2023, the Kern County Department of Human Services (department) received a referral on behalf of then 16-year-old S.L. alleging sexual and physical abuse by mother and father. S.L. had reported she had been raped with penetration by her brother-in-law T.I. on two occasions and that father grabbed her buttocks daily and made comments about how her buttocks felt. Additionally, she reported father had been physically abusing her. Father had slammed her against a dresser and pulled her by the hair. S.L. said she reported the rape to mother, who told her not to say anything unless she wanted "to ruin the family." That same day, law enforcement placed S.L. into protective custody. She was taken to the hospital and placed on a psychiatric hold due to suicidal ideations and depression.

The following day a social worker interviewed S.L. She reported she was adopted by mother and father when she was eight years old along with her two siblings. She felt she was treated differently than her siblings because she looked different. She was always afraid of getting in trouble. In regard to the abuse, S.L. stated she disclosed to her

---

[1]     All rule references are to the California Rules of Court.

[2]     All statutory references are to the Welfare and Institutions Code.

teacher she felt suicidal and told her everything that had been happening. The teacher called a counselor who informed S.L. she would need to report the incident to law enforcement. Law enforcement then went to S.L.'s house and mother agreed to take S.L. to the substation. On their way there, mother told S.L. to convince law enforcement that nothing was happening or not to say anything. S.L. said mother knew why law enforcement was involved as she had attempted to speak with mother about the rape, but mother never listened to or believed her. When they got to the substation, mother told S.L., " 'Please don't say anything.' " S.L. said she tried to tell mother multiple times that T.I. had raped her but mother would not believe her. S.L. described two incidents in which he penetrated her with his penis and touched her vagina with his fingers. After the first incident, she began cutting and burning herself. Another time, she was changing and T.I. took pictures of her naked body.

S.L. described her relationship with mother and father, stating she did not have a good relationship with them as they called her names and blamed her for the abuse. She said father physically abused her and started touching her buttocks when she was 10 years old. He would slap, grab, and squeeze her buttocks daily in front of everyone. She told father multiple times to stop touching her buttocks. S.L. reported mother had seen father touch her buttocks and mother would not do or say anything. Additionally, father would make inappropriate comments about her buttocks. As a result of the rapes, name calling, being treated differently than her siblings, mother's failure to help her, and father's abuse, she ran away three times. She had never received counseling but wanted to.

**B.    *Petition and Detention***

On February 10, 2023, the department filed a petition on behalf of S.L. pursuant to section 300, subdivisions (c) (serious emotional damage) and (d) (sexual abuse). The petition alleged in count c-1 that S.L. was suffering serious emotional damage or was at substantial risk of suffering serious emotional damage, as evidenced by severe anxiety, depression or withdrawal, and aggressive behavior as a result of mother and father's

3.

conduct. Mother and father called her a "slut, whore, and bitch." Mother blamed S.L. for the rapes and utilized threatening, belittling, and intimidating verbal expressions in front of her. S.L. was suffering from suicidal ideations and would cut and burn herself. Mother and father had failed to assist her with her mental health needs.

The petition further alleged three counts in regard to sexual abuse. Count d-1 alleged S.L. had been sexually abused or was at substantial risk of being sexually abused by father. Father had been touching, slapping, and squeezing S.L.'s buttocks daily since she was 10 years old. He also made sexual comments about her buttocks. Mother had witnessed father touch S.L.'s buttocks and failed to take action. Count d-2 alleged mother had failed to protect S.L. from sexual abuse and she knew, or reasonably should have known, that S.L. was in danger of being sexually abused as she had witnessed father touching S.L.'s buttocks, and mother failed to protect her. Count d-3 alleged mother and father failed to protect S.L. from sexual abuse and they knew, or reasonably should have known, she was in danger of being sexually abused. S.L. had been sexually abused by T.I. on two occasions when she was 13 and 15 years old. T.I. had vaginal intercourse with S.L., touched her vagina, and observed her naked while dressing. S.L. reported the abuse to mother on several occasions, but mother refused to believe her. Mother and father did not report the sexual abuse to law enforcement and continued to allow T.I. to have access to her.

On February 14, 2023, the juvenile court held a detention hearing. The court made a temporary finding that a prima facie case had been established and ordered S.L. detained. The court subsequently adopted the findings at a continued detention hearing and ordered mother to participate in supervised visits. Father did not request visits.

## C.     *Jurisdiction and Disposition*

In its jurisdiction and disposition social studies, the department recommended the allegations in the petition be found true, S.L. be removed from parental custody, and mother and father be bypassed for reunification services pursuant to section 361.5, subdivision (b)(6). Although mother had been court-ordered supervised visits, she had

4.

been refusing to visit with S.L., but eventually asked to participate in a visit. The department stated it would not be recommending mother or father receive reunification services because of the sexual abuse S.L. suffered while in their care. Father was one of the perpetrators of the abuse and mother witnessed the abuse and failed to take action. Additionally, mother and father had failed to protect S.L. from the sexual abuse of T.I. after she reported the sexual abuse to mother. Mother and father continued to allow T.I. to have access to S.L. and did not report the abuse to law enforcement. Further, S.L. reported she did not wish to reunify with mother and father as she did not feel safe in the home. The department concluded that due to mother's lack of interest to visit with S.L. and participate in her life, it did not appear it would be detrimental to S.L. if reunification services were not offered. The department noted S.L. had been consistent in her statements regarding the sexual abuse, and was clearly a "target child" in that she was targeted to endure all of the abuse in the home.

On August 1, 2023, the juvenile court held a contested jurisdiction and disposition hearing. Social worker Lisette Villarreal Lopez testified S.L. told her father began touching, slapping, and squeezing her buttocks daily since she was 10 years old, and made sexual comments about her. However, Lopez never interviewed the parents because law enforcement did not allow her to.

S.L. testified she tried to tell mother about the sexual abuse from T.I., but she was always interrupted or ignored. She said she never actually got the words out but told her T.I. had done "something" to her. She did, however, write that T.I. raped her in her journal, which mother found. When mother found the journal, she confronted S.L. but did not believe what she had written. Mother told her that if anyone found out, it would ruin the family. After mother found her journal and read it, T.I. continued to come to the family home. S.L. never told father about the abuse. In regard to father, she said he would grab her buttocks and make sexual comments. He did it every day he was home since she was 10 years old. She said he would smack and grab her buttocks and mother witnessed it. She told father it made her uncomfortable, but he continued to do it. She

told him, " 'I don't like you doing that.' " S.L. further testified that every time she asked to go to counseling, she was mocked and made fun of. Additionally, she said mother was aware she had been cutting herself. She said she was no longer scared of returning home because she had learned to forgive, but she felt uncomfortable and did not want to go back.

Mother testified S.L. first went into her care when she was eight months old. Thereafter, she was in her care on and off until they adopted her when she was eight years old. She did not know S.L. suffered from severe anxiety and depression, or that she was suicidal, but mother was aware she was aggressive and had seen cuts on her arm. She previously took S.L. to therapy when she was six or seven years old and was still in her biological mother's custody. After she adopted her, she said S.L. continued to have mental health issues, but she did not continue in therapy or get prescribed medication. She said she suggested S.L. go to therapy, but S.L. was not open to it. Mother believed in therapy as she had been in therapy herself after her biological daughter had been raped. She had also enrolled her biological daughter in therapy. Mother denied she ever called S.L. " 'a slut, whore or a bitch,' " or any other derogatory names. She denied S.L. ever shared with her that she had been raped. She said if she had known, she would have gone after T.I. and would have taken it seriously. Mother said she took care of S.L. most of the time and father was away for long periods of time for work, even up to one year. She never witnessed father touch, slap, or squeeze S.L.'s buttocks, or make sexual comments about her. S.L. never mentioned anything to her about father and he was never alone with her. She also never heard S.L. tell father not to slap her buttocks. She denied she or father ever physically disciplined her. She said she never read S.L.'s journal.

In making its ruling, the juvenile court stated it found S.L. to be credible and consistent, but not mother. The court stated, "I do not find [mother] to be credible in any way, shape, or form." The court found the allegations in the petition true, ordered S.L.

detained, and bypassed mother and father for reunification services pursuant to section 361.5, subdivision (b)(6).

## DISCUSSION

### I.  Adequacy of Writ Petition

As a preliminary matter, we address the adequacy of mother and father's petitions. Rule 8.452 sets forth the content requirements for an extraordinary writ petition. "The petition must be liberally construed and must include:  [¶] (A) The identities of the parties; [¶] (B) The date on which the superior court made the order setting the hearing; [¶] (C) The date on which the hearing is scheduled to be held; [¶] (D) A summary of the grounds of the petition; and [¶] (E) The relief requested."  (Rule 8.452(a)(1)(A)–(E).) Additionally, "[t]he petition must be verified," and it "must be accompanied by a memorandum."  (Rule 8.452(a)(2)–(3).)  In keeping with rule 8.452(a)(1), we liberally construe a writ petition in favor of its adequacy where possible, recognizing that a parent representing him or herself is not trained in the law.  However, the petitioner must at least articulate a claim of error and support it by citations to the record.  Failure to do so renders the petition inadequate in its content and the reviewing court need not independently review the record for possible error. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Mother and father's petitions are nearly identical and are technically inadequate as they did not identify the order from which they seek relief, or specifically identify the legal error committed with citations to legal authority.  Instead, in the area of the "Petition for Extraordinary Writ" (JV-825) form designated for identifying the grounds on which the order was erroneous, they each wrote the following:  "Violation of the 14th Amendment (Due Process).  Parental and Civil Rights were violated and by bias of the court."  Nevertheless, where possible, we liberally construe a petition in favor of finding it adequate for review.  (Rule 8.452(a)(1).)  We do so in this case and construe mother and father's petitions as asserting the juvenile court erred in bypassing them for reunification services under section 361.5, subdivision (b)(6).

7.

We note that the department urges this court to dismiss father's petition as deficient because it does not comply with the rule. We do have that discretion. However, we decline to do so and as mentioned, we construe his petition in favor of finding it adequate for review. (Rule 8.452(a)(1).)

## II.    Bypass of Reunification Services

"Section 361.5, subdivision (b) contains several reunification 'bypass provisions' permitting (or, in some cases, requiring) a court to deny a parent reunification services. [Citations.] Once the juvenile court determines by clear and convincing evidence that a case presents one of the situations set forth in section 361.5, subdivision (b), 'the general rule favoring reunification is replaced by a legislative assumption that offering [reunification] services would be an unwise use of governmental resources.' " (*In re Christopher L.* (2020) 56 Cal.App. 5th 1172, 1189.)

The bypass provision at issue here—section 361.5, subdivision (b)(6)—applies when "the child has been adjudicated a dependent pursuant to any subdivision of [s]ection 300 as a result of severe sexual abuse … to the child … and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent." (§ 361.5, subd. (b)(6)(A).)

"The court *shall not* order reunification for a parent … described in [section 361.5, subdivision (b)(6)] unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2), italics added.) "In determining whether reunification services will benefit the child pursuant to [section 361.5, subdivision (b)(6)], the court shall consider any information it deems relevant, including the following factors: [¶] (1) The specific act or omission comprising the severe sexual abuse or the severe physical harm inflicted on the child or the child's sibling or half sibling. [¶] (2) The circumstances under which the abuse or harm was inflicted on the child or the child's sibling or half sibling. [¶] (3) The severity of the emotional trauma suffered by the child or the child's sibling or half sibling. [¶] (4) Any history of abuse of other children by the offending parent or guardian. [¶] (5) The

8.

likelihood that the child may be safely returned to the care of the offending parent or guardian within 12 months with no continuing supervision.  [¶]  (6) Whether or not the child desires to be reunified with the offending parent or guardian." (§ 361.5, subd. (i)(1)–(6).)  " ' "A juvenile court has broad discretion when determining whether … reunification services would be in the best interests of the child under section 361.5, subdivision (c).  [Citation.]  An appellate court will reverse that determination only if the juvenile court abuses its discretion." ' [Citations.]  If the juvenile court's finding that further services would be in the children's best interest is not supported by substantial evidence, then the order for such services constitutes an abuse of discretion." (*In re A.E.* (2019) 38 Cal.App.5th 1124, 1140–1141.)

Here, S.L. was adjudged a dependent pursuant to section 300, subdivision (c), as a result of severe sexual abuse by T.I. and father.  The juvenile court found true the allegations that T.I. had sexual intercourse with S.L., and touched and penetrated S.L.'s vagina with his fingers and penis.  S.L. reported the abuse to mother, but she did not believe her.  Neither mother, nor father reported the abuse to law enforcement and continued to allow T.I. to have access to S.L.  Additionally, the court found true the allegation that father had begun touching, slapping, and squeezing S.L.'s buttocks since she was 10 years old, and made sexual comments about her.  S.L. reported mother had seen father touch her buttocks.  The court found S.L.'s testimony to be credible.  Although mother denied knowledge of the sexual abuse, the court did not find her to be credible.  Therefore, substantial evidence supports the court's bypass of reunification services.

The evidence also supports the juvenile court's implied finding that providing mother and father with reunification services would not be in S.L.'s best interest given father's history of sexually abusing her, mother's history of failing to protect her from sexual abuse from T.I., the parents' failure to get S.L. mental health help, and S.L's desire not to reunify with them.  Accordingly, we find the court did not abuse its discretion.

## **DISPOSITION**

The petitions for extraordinary writ are denied. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).